PER CURIAM.
Appellant was convicted of three counts of sexual battery on a mentally defective person based upon three distinct acts involving the same victim during the same encounter. He challenges his convictions on counts I and II, arguing that the evidence was insufficient given the victim's equivocal testimony at trial regarding the alleged acts giving rise to these convictions. Appellant does not challenge his conviction on count III, and we affirm that conviction without discussion. We reverse the convictions on counts I and II but certify a question of great public importance to the Florida Supreme Court.
In March 2013, sixteen-year-old M.H. ("the victim") lived at home with her mother ("Mother"), her brother, her eighteen-year-old sister ("K.H."), K.H.'s four-month-old son, and Appellant, who was K.H.'s twenty-nine-year-old boyfriend. The victim has an IQ of 55. She attends a special school and functions developmentally at approximately a seven-and-a-half-year-old level.
*1135 During the early morning hours before daybreak on March 18, 2013, the victim was in bed when Appellant came into her bedroom and sexually battered her. K.H. was awakened by the victim's bedroom door squeaking several times and noticed that Appellant was not in their room. She opened the victim's bedroom door, looked in, and asked the victim why she kept "coming in and out" and whether she knew of Appellant's whereabouts. The victim told her that she did not know where Appellant was, even though he was hiding in her closet at the time. After K.H. went back to her room and closed the door, Appellant left the victim's bedroom and went back to the room he shared with K.H.
The victim went to Mother's bedroom and awakened her. The victim was in her pajamas and crying. She appeared scared. She told Mother that Appellant had touched her. When Mother asked her where Appellant had touched her, the victim demonstrated by putting her right hand on her leg, moving it to her vaginal area, and rubbing and moving her hand up and down. The victim told Mother that she had texted her to try to tell her Appellant was in her room. Mother checked her phone and saw six text messages from the victim. Around 7:00 p.m. that evening, after the victim had showered and changed her clothes, Mother took the victim to the hospital. Hospital personnel called the police.
Marion County Sheriff's Deputy Wilkes interviewed the victim at the hospital. Later, Sheriff's Detective Smith conducted a recorded interview with the victim. During the recorded interview, the victim told Detective Smith that Appellant came into her bedroom while she was half-asleep, removed her covers, moved her leg, put his finger in her private part, and made her feel uncomfortable. The victim also disclosed for the first time that Appellant had "put his tongue ... on my private" and that Appellant dropped his pants halfway and "pushed [his] part in my part."
The State charged Appellant with three counts of sexual battery based upon the three separate acts of oral, penile, and digital penetration or union. The case proceeded to trial approximately a year later. At trial, the victim testified that Appellant put his finger in her "girl part." She demonstrated to the jury what she meant by "girl part" by standing and pointing to her vaginal area. However, contrary to her recorded statement to Detective Smith, which was admitted into evidence pursuant to section 90.803(23), Florida Statutes (2014), the victim specifically denied that Appellant ever touched her with his mouth or penis, though the State asked her several times whether he had done so. She testified that she was sure that Appellant did not ever put his "boy part" in her "girl part." When further questioned by the State, however, the victim acknowledged her recorded statement to Detective Smith, confirmed that her memory was better when she gave her recorded statement, and repeatedly confirmed that she had been truthful when she gave the recorded statement.
The State also introduced collateral crimes evidence from K.H. and L.F., who both testified that Appellant had sex with them when they were sixteen or seventeen years old and Appellant was an adult. K.H. testified to engaging in consensual sexual activity with Appellant, including digital and penile sex. L.F. testified that Appellant forced penile sex upon her.
After Appellant's motion for judgment of acquittal was denied, the jury returned a verdict finding Appellant guilty of all three counts. Appellant contends that the trial court was obligated to grant a judgment of acquittal on counts I and II, which were based upon union or penetration by Appellant's *1136 mouth and penis, because the victim's in-court testimony recanted the sole evidence supporting those convictions. Appellant relies primarily on Beber v. State , 887 So.2d 1248 (Fla. 2004), and Baugh v. State , 961 So.2d 198 (Fla. 2007).
In Beber , the Florida Supreme Court reversed a conviction for sexual battery of a minor when the victim partially recanted his videotaped statement that was admitted pursuant to section 90.803(23). The supreme court concluded that the videotaped testimony "standing alone" was insufficient to support the conviction absent "other proper corroborating evidence." 887 So.2d at 1253 (emphasis added).
In Baugh , the victim gave a recorded statement to a police detective that the defendant made her perform fellatio on him and that she had done so twelve different times. 961 So.2d at 201. Although she later recanted, the court admitted the recorded statement under section 90.803(23). Id. at 201, 202. The Second District Court of Appeal upheld the defendant's conviction and concluded that the recorded statement was properly admitted given the following corroborating evidence: (1) the victim's spontaneous statement to her mother that the defendant made her perform fellatio on him; (2) the defendant's "admission" in which he told the victim's mother that he wanted the victim to perform fellatio on him while the mother watched and then to have sex with the mother; (3) the defendant's consciousness of guilt evidenced by his attempted suicide; and (4) the suggestion that the defendant engaged in witness tampering as testified by both a prison inmate and the mother's friend. Id. at 202. The supreme court reversed, holding that none of this so-called corroborating evidence, either individually or collectively, corroborated the victim's statement to the detective concerning fellatio-the basis of the charge against the defendant in that case. Id. at 203.
Here, the State contends that "proper" corroborating evidence was admitted. It argues:
Here, unlike in Beber and Baugh , the State presented evidence corroborating [the victim's] out-of-court statements, and therefore the trial court properly denied judgment of acquittal, notwithstanding M.H.'s trial testimony that Appellant did not touch her vagina with his mouth or penis. Specifically, [the victim's] out-of-court statements to Detective Smith were corroborated by: (1) K.H.'s testimony that she could not find Appellant anywhere inside the house at the time [the victim] asserted that Appellant was hiding in her closet; (2) K.H.'s testimony that she heard [the victim's] bedroom door opening and closing at around the time the assault occurred; (3) [the victim's] repeated text messages to [Mother], begging her mother to come help her as Appellant sexually assaulted her; (4) [Mother's] testimony that [the victim] came to her room crying and upset immediately after the assault, and; (5) the similar fact testimony of [L.F.] and K.H.
Of the listed, purported corroborating evidence, only the similar fact testimony arguably corroborates the specific act of penile penetration. Nevertheless, the weight of this so-called corroborating evidence pales in comparison to that which the Florida Supreme Court rejected as insufficient in Baugh . Although the Baugh victim "totally repudiated" her out-of-court statement, the principle of law apparently applies even to a partially repudiated out-of-court statement, as illustrated in Beber , where the victim repudiated his pre-trial statement that the defendant had performed fellatio on him but continued to maintain that the defendant touched his penis.
*1137 Though not specifically argued by the State here, another potentially distinguishing fact in this case is that the victim maintained that her prior statement was given when her memory was better and she confirmed the truthfulness of her prior statement. If the jury accepted that testimony, it could have concluded that her partial in-court repudiation was the product of a memory lapse or diminished intellect, or both. Under these unique facts, arguably, it was for the jury to decide which version of her trial testimony was to be credited. Baugh , however, seems to foreclose such a jury determination.
We are constrained to reverse the convictions on counts I and II on the basis of Baugh . However, we certify the following question to our supreme court as one involving a question of great public importance:
WHETHER BEBER v. STATE , 887 So.2d 1248 (Fla. 2004), AND BAUGH v. STATE , 961 So.2d 198 (Fla. 2007), REQUIRE A COURT TO GRANT A JUDGMENT OF ACQUITTAL WHERE A DEVELOPMENTALLY DISADVANTAGED OR CHILD VICTIM CONFIRMS THE TRUTHFULNESS OF A PRIOR OUT-OF-COURT STATEMENT ADMITTED PURSUANT TO SECTION 90.803(23), FLORIDA STATUTES, AND CONFIRMS THAT SOME CRIMINAL SEXUAL ACT OCCURRED, BUT ALSO OFFERS CONTRADICTORY TESTIMONY AT TRIAL AS TO SOME OF THE SPECIFIC ACTS THAT PURPORTEDLY OCCURRED DURING THE SAME ENCOUNTER?
We affirm Appellant's conviction on count III and reverse Appellant's convictions on counts I and II. Based on our disposition and the State's concession of error regarding score sheet error, on remand, the trial court shall correct the score sheet.
AFFIRMED in part; REVERSED in part, and REMANDED.
BERGER and WALLIS, JJ., concur.
TORPY, J., concurs and concurs specially, in which BERGER and WALLIS, JJ., concur.
TORPY, J., concurring and concurring specially.
Given the precedents from the Florida Supreme Court, I am constrained to concur. If I were deciding this case as one of first impression, I would adopt what appears to be the majority view as expressed in Commonwealth v. Brown , 617 Pa. 107, 52 A.3d 1139 (2012), based upon the thorough analysis and sound reasoning of Pennsylvania's highest court. Apparently, the per se rule adopted by the Florida Supreme Court has been adopted in only two other states, Montana and Massachusetts. Brown , 52 A.3d at 1166. It evolved from dicta that originated in State v. Moore , 485 So.2d 1279 (Fla. 1986). There, the state's only evidence in a murder case consisted of grand jury testimony from two eyewitnesses. The witnesses completely repudiated their grand jury testimony at trial, testifying that they had lied to the grand jury. Moore , 485 So.2d at 1280-81. Although the Fourth District Court of Appeal certified a narrow question to the Florida Supreme Court based on the particular prior inconsistent statements and circumstances presented there, the supreme court rephrased and greatly broadened the question as follows:
IS A PRIOR INCONSISTENT STATEMENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION WHEN THE PRIOR INCONSISTENT STATEMENT IS THE ONLY SUBSTANTIVE EVIDENCE OF GUILT?
*1138 Id. at 1281. Answering the rephrased question in the negative, this dicta became the holding in subsequent cases leading to the decisions cited by Appellant and controlling the outcome in this case.
In all of these cases, the prior inconsistent statements were admissible as substantive evidence because they were not hearsay by definition or because they fell within a statutory exception to the hearsay rule. Accordingly, the inherent doctrinal underpinning for the holdings in these cases was the Due Process Clause of the Fourteenth Amendment, not the Florida Evidence Code. For due process purposes, when a conviction is challenged on sufficiency of evidence grounds, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia , 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (citation omitted). Historically, the application of this test rarely results in the reversal of a conviction by jury, even when the evidence is of questionable reliability.
I think the relevant question in Moore was whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt when the sole evidence of guilt was grand jury testimony that had been repudiated under penalty of perjury. Under this construct, I do not necessarily quarrel with the outcome in Moore . What I take issue with is dicta in Moore that unnecessarily lumped all "prior inconsistent statements" into one category. Doing so created a bright-line fiction that ignored the fact that all such statements are not qualitatively equal.
A section 90.803(23) statement, for example, is based upon a legislative determination that this category of out-of-court statements is sufficiently reliable to support a conviction even when the declarant is unavailable at trial. The enactment of this narrow exception to the hearsay rule is grounded in the truism that this particular category of victims cannot always effectively communicate in a trial environment. They are also vulnerable to manipulation when, as is often the case, the defendant is a family member or friend. As a reliability safeguard, the victim's prior out-of-court statement can only be admitted as evidence after the trial judge makes specific findings of reliability based on evidence. I do not know how an appellate court can conclude that no rational jury can convict based on admissible, substantive evidence that is independently tested for reliability during a separate hearing before the trial judge, unless it first concludes that the trial judge's threshold determination was erroneous under the appropriate standard of review.
The per se bright-line rule from the Moore dicta also divests the finder-of-fact of the opportunity to consider the circumstances under which and the extent to which the prior statement is repudiated. In Moore , the witnesses admittedly perjured themselves, either in their grand jury testimony or their subsequent trial testimony. Stated in due process terms, no rational jury could credit anything the witnesses proffered because they demonstrated that they had no regard for the oath. Here, by contrast, the developmentally disabled witness obviously had difficulty communicating during trial. When asked how long Appellant had lived in her home, "a day," "a week," or "a month," she answered, "I don't remember." She described her sex organ as "a girl part" and professed to not know any other name for her sex organ. Although she recalled that Appellant had pulled down his pants "half way," she said she did not remember what he did when he pulled them down. Finally, although she contradicted her recorded statement during her in-court testimony, she also repeatedly *1139 confirmed that everything she said in the pretrial recorded statement was true. In my view, a rational jury, who viewed the demeanor of the witness, could have sifted through all of this evidence and reached the conclusion that the contradictions during trial one year after the incident were the product of memory lapses, repressed memory due to stress, diminished capacity for communications, or any combination thereof, rather than a lack of candor.
In short, I would adopt the holding in Brown :
[W]e hold that a conviction which rests solely on the prior inconsistent statements of witnesses who testify at trial, where such statements were properly admitted, but recanted at trial, does not offend due process provided the makers of such statements have been made available for cross examination, and, based on the content of the statements as a whole, a finder-of-fact could reasonably find that every element of the offense ... charged has been proven beyond a reasonable doubt.
Brown , 52 A.3d at 1184. Under this test, I would affirm the convictions here.[1]
Under the Florida Supreme Court decisions, whether the statement is the sole evidence apparently depends on whether "sufficient" or "proper" corroborating evidence is introduced. I would make a distinction between this case and cases like Moore and State v. Green , 667 So.2d 756 (Fla. 1995), where the prior statement was completely repudiated and exonerated the defendants from any criminal conduct. Here, by contrast, the victim did not repudiate her out-of-court statement. She contradicted facts related to the details of specific acts perpetrated during the criminal encounter. Although the acts themselves were separate crimes, the victim's direct testimony in court of the related criminal acts and certain other confirmed facts (such as Appellant pulling his pants down) circumstantially corroborated the prior statement.
As for the total repudiation cases, after Baugh , the appellate standard for measuring the "sufficiency" of the corroborating evidence is unclear to me. It should be the same due process standard by which the sufficiency of all evidence supporting a conviction is measured. Using this standard, it is hard for me to reach the conclusion that the Baugh majority reached.

I note Justice Overton's concurring opinion in Moore expressing his concern about confrontation. I concur in this sentiment.